UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

LAURIE DeLAVERGNE,

    Plaintiff,

v.                          CASE NO. 07-CV-13400

COMMISSIONER OF         DISTRICT JUDGE ROBERT H. CLELAND
SOCIAL SECURITY,          MAGISTRATE JUDGE CHARLES E. BINDER

    Defendant.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION[1]**

**I.    RECOMMENDATION**

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

---

[1] The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), the recently amended provisions of Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://jnet.ao.dcn/img/assets/5710/dir7-108.pdf. This Report and Recommendation addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

## II. REPORT

### A. Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for a period of disability and disability insurance benefits. This matter is currently before the Court on cross motions for summary judgment. (Dkt. 8, 13.)

Plaintiff was 51 years of age at the time of the most recent administrative hearing. (Tr. at 19.) Plaintiff's relevant employment history included work as a machinist for an automobile manufacturer September of 1975 to June of 2005. (Tr. at 66.)

Plaintiff filed the instant claim on December 19, 2005, alleging that she became unable to work on June 8, 2005. (Tr. at 55.) The claim was denied initially and upon reconsideration. (Tr. at 31.) In denying Plaintiff's claims, the Defendant Commissioner considered bilateral carpal tunnel and bypass surgery as possible bases of disability. (*Id.*)

On November 13, 2006, Plaintiff appeared with counsel before Administrative Law Judge ("ALJ") Bennett S. Engelman, who considered the case *de novo*. In a decision dated March 5, 2007, the ALJ found that Plaintiff was not disabled. (Tr. at 13-21.) Plaintiff requested a review of this decision on April 10, 2007. (Tr. at 11.)

The ALJ's decision became the final decision of the Commissioner when, on June 19, 2007, the Appeals Council denied Plaintiff's request for review. (Tr. at 4-6); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004). On August 15, 2007, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision. (Dkt. 1.)

### B. Standard of Review

In enacting the social security system, Congress created a two-tiered system in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 110 S. Ct. 885, 890, 107 L. Ed. 2d 967 (1990). The administrative process itself is multifaceted in that a state agency makes an initial determination which can be appealed first to the agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142, 107 S. Ct. 2287, 96 L. Ed. 2d 119 (1987). If relief is not found during this administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the court "must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standard or has made findings of fact unsupported by substantial evidence in the record." *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005); *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case de novo, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984). "It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007). *See also Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) (an "ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."); *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (the

"ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (citing *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (quoting Soc. Sec. Rul. 96-7p, 1996 WL 374186, *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, the court may not reverse the Commissioner's decision merely because it disagrees or because "there exists in the record substantial evidence to support a different conclusion." *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006); *Mullen*, 800 F.2d at 545. The scope of the court's review is limited to an examination of the record only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Rogers,* 486 F.3d at 241; *Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a 'zone of choice' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (citing *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record,

regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court must discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 Fed. App'x 496, 508 (6th Cir. 2006) ("'[a]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party."); *accord, Van Der Maas v. Comm'r of Soc. Sec.*, 198 Fed. App'x 521, 526 (6th Cir. 2006).

### C. Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 Fed. App'x 515, 524 (6th Cir. 2003). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); *see also* 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the application of a five-step sequential analysis:

> Step One: If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two: If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three: If Plaintiff is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.

> Step Four: If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five: Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *Heston,* 245 F.3d at 534. " If the Commissioner makes a dispositive finding at any point in the five-step process, the review terminates." *Colvin*, 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity of limitations caused by her impairments and the fact that she is precluded from performing her past relevant work." *Jones*, 336 F.3d at 474, (cited with approval in *Cruse,* 502 F.3d at 540.) If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers,* 486 F.3d at 241; 20 C.F.R. §§ 416.920(a)(4)(v), (g).

### D. Administrative Record

A review of the medical evidence contained in the administrative record and presented to the ALJ indicates that Plaintiff was treated by Dr. J. E. Middledorf, D.C., D.O., M.S., who evaluated Plaintiff's bilateral upper extremities and performed an electromyographic examination ("EMG") test as part of that evaluation on August 9, 2004. (Tr. at 110.) Dr. Middledorf found Plaintiff had "full active range of motion of the [sic] both wrists." (Tr. at 109.) In addition he found that her "[t]humb opposition strength was normal." (Tr. at 109.) However, Dr. Middledorf also noted that the "Phalen's test was positive bilaterally for paresthesias into the second, third and

fourth fingers bilaterally" and that the "carpal tunnel compression test reproduced similar symptoms bilaterally." (Tr. at 109.)

From May through September of 2005, Plaintiff sought treatment with Arno Weiss, Jr., M.D., who performed carpal tunnel surgery on Plaintiff's right hand with good results. (Tr. at 131-46.) However, in December 2005, Plaintiff was seen by Thomas H. Beird, M.D., and his notes indicate that Plaintiff "gained no improvement by RCTR [Right Carpal Tunnel Release surgery] by Dr. Weiss one month ago though EMG's [sic] show bilateral and severe involvement." (Tr. at 154.) Dr. Beird saw "potential for improvement on the right side" and "strongly encouraged [Plaintiff] to undergo LCTR [Left Carpal Tunnel Release]." (*Id.*) In March 2006, Plaintiff underwent the left carpal tunnel surgery performed by Dr. Beird. (Tr. at 188.) In July 2006, Dr. Beird noted that the "numbness is fully resolved in both hands" and that "[p]ilar pain [is] present, but [is] resolving nicely." (Tr. at 212.)

From September 2004 through March 2005, Plaintiff received "trigger point injections" of pain medication for "myofascial pain syndrome involving the right chest wall and the subcostal region" by Dr. L. Madala. (Tr. at 115-18.)

In November 2004, Plaintiff underwent an esophagogastroduodenoscopy performed by Dr. R. Naram, which revealed a "small hiatus hernia." (Tr. at 113.) Other than mild gastritis, the examination revealed no further medical problems in the esophagus, stomach, or duodenum. (*Id.*)

Plaintiff was seen by Dr. V. Pasulpuleti in March 2005 for right lower back pain. (Tr. at 119-20.) Dr. Pasulpuleti determined Plaintiff had "lumbo-sacral paraspinal denervation with radiculopathy in SI root distribution, sub-acute and active in nature [which was] [m]oderate in severity." (Tr. at 120.) Dr. Pasulpuleti noted that "[t]hese findings are commonly seen in clinical

conditions like degenerative joint disease, disc disease, facet disease, osteophytes, spondylosis, spondyloisthesis and/or stenosis." (Tr. at 121.)

Plaintiff underwent coronary artery bypass surgery on December 19, 2003, performed by Dr. R. Cherukuri. (Tr. at 99.) In August 2005, an echocardiogram showed that Plaintiff's aortic root and valve, mitral valve and apparatus, and ventricular systolic function were all normal and that Plaintiff had no chamber enlargement or pericardial effusion. (Tr. at 125.) Therefore, Dr. Rao V.C. Gudipati concluded that Plaintiff has "[n]ormal left ventricular systolic function." (*Id.*) Plaintiff also participated in an exercise cardiolite spect stress test in August 2005, during which the doctor concluded that the "tomographic imaging is consistent with a small reversible defect seen to the distal inferior wall, mild in degree" and that all other areas were normal. (Tr. at 127.) Plaintiff was able to exercise into "stage IV of the Bruce protocol without chest pain or significant ST change or arrhythmia." (*Id.*)

A residual function capacity ("RFC") assessment performed on Plaintiff by a DDS physician (Dr. Mika Robin) in April 2006 concluded that Plaintiff is able to occasionally lift 20 pounds, frequently lift 10 pounds, stand or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and that Plaintiff's ability to push or pull is limited in the upper extremities. (Tr. at 174.) The DDS consultant also concluded that Plaintiff has frequent postural limitations in all areas and that she can never use a ladder or scaffolding. (Tr. at 175.) He also determined that Plaintiff was limited to occasional bilateral overhead manipulations and frequent bilateral manipulations. (Tr. at 176.) The DDS consultant further stated that Plaintiff should avoid concentrated exposure to hazards from machinery, heights, etc. (Tr. at 177.) Finally, the consultative physician concluded that Plaintiff's symptoms are attributable to a medically determinable impairment. (Tr. at 178.)

**E. ALJ Findings**

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff had not engaged in substantial gainful activity since June 8, 2005, and that the period of her insured status will terminate December 1, 2010. (Tr. at 17.) At step two, the ALJ found that Plaintiff's bilateral carpal tunnel and coronary artery disease were "severe" within the meaning of the second sequential step. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 18.) At step four, the ALJ found that Plaintiff could not perform her previous work as a machinist. (Tr. at 19.) At step five, the ALJ denied Plaintiff benefits because Plaintiff could perform a significant number of jobs available, such as security guard, childcare worker, and usher/ticket taker in the national and regional economy, i.e., the lower peninsula of Michigan. (Tr. at 20.)

Using the Commissioner's grid rules as a guide, the ALJ found that Plaintiff has the residual functional capacity to perform a limited range of light work (Tr. at 18-20), and he thus concluded that Plaintiff would remain able to perform a significant number of jobs existing in the national and regional economy. (*Id.*)

**F. Analysis and Conclusions**

**1. Legal Standards**

The ALJ determined that Plaintiff possessed the residual functional capacity to return to a limited range of light work. (Tr. at 18.) Light work is defined as follows:

> Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities. If

9

someone can do light work, we determine that he or she can also do sedentary work, unless there are additional limiting factors such as loss of fine dexterity or inability to sit for long periods of time.

20 C.F.R. § 404.1567(b).

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether or not substantial evidence supports the ALJ's decision.

2. **Substantial Evidence**

Plaintiff argues that substantial evidence fails to support the findings of the Commissioner. As noted earlier, if the Commissioner's decision is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. *McClanahan,* 474 F.3d at 833; *Mullen,* 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Although Plaintiff was also treated for a "small hiatus hernia" (Tr. at 113) and "myofascial pain syndrome" (Tr. at 115-18), I suggest that substantial evidence supports the ALJ's finding that these impairments were not severe. (Tr. at 17.)

The ALJ found that Plaintiff's bilateral carpal tunnel and coronary artery disease were severe, but not disabling, impairments. After review of the medical evidence of record, I suggest that substantial evidence supports the ALJ findings. As mentioned, Plaintiff's treating physicians, Drs. Middledorf, Weiss, and Beird, concurred that Plaintiff had bilateral carpal tunnel issues that were largely resolved surgically and any remaining pain was "resolving nicely." (Tr. at 109, 131, 212.) As to Plaintiff's coronary artery disease, the only evidence presented indicated that after her heart surgery, Plaintiff's performed well under stress, i.e., to stage IV, without chest pain or

arrhythmia (Tr. at 127), and that all cardiac function was normal other than a "mild" defect in the "distal inferior wall." (*Id.*) I thus suggest that there is no evidence to support the allegation of disabling cardiac function or pain and that substantial evidence supports the ALJ's decision.

The ALJ's findings also follow the opinions of the vocational expert which came in response to proper hypothetical questions that accurately portrayed Plaintiff's individual physical and mental impairments in harmony with the objective record medical evidence as presented by all the treating and examining physicians, as well as the daily activities described by Plaintiff herself, i.e., that she drives, cooks, goes to the grocery store, sweeps leaves off the deck, and that she can lift a gallon milk jug but cannot lift heavy items. (Tr. at 223.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

"The rule that a hypothetical question must incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp. 2d 489, 497 (E.D. Mich. 2005). The ALJ is only required to incorporate the limitations that he finds credible. *Casey v. Sec'y of HHS,* 987 F. 2d 1230, 1235 (6th Cir. 1993). This obligation to assess credibility extends to the claimant's subjective complaints such that the ALJ "can present a hypothetical to the VE on the basis of his own assessment if he reasonably deems the claimant's testimony to be inaccurate." *Jones*, 336 F.3d at 476.

Although Plaintiff relies on Dr. Pasulpuleti's opinion to discredit the accuracy of the hypothetical and to support her "complaints of low back [pain] radiating into the right leg," and apparently to support Plaintiff's claim that such pain was the fruit of a "severe" impairment (Dkt. 8 at 11, 13), Dr. Pasulpuleti did not conclude that Plaintiff had any of the "clinical conditions like

degenerative joint disease"; he merely stated that the "moderate" "radiculopathy" he found was "commonly seen in [these] clinical conditions like degenerative joint disease . . . ." (Tr. at 120-21.) I therefore suggest that his statement is inconclusive and neither supports nor undermines Plaintiff's alleged impairments or complaints of disabling pain. *See Redfield, supra, Grecol v. Halter*, 46 Fed. App'x 773, 776 (6th Cir. 2002) (although ALJ misstated Plaintiff's level of daily activity, hypothetical was proper where doctors' evidence did not support claim that pain caused alleged limitations).

Accordingly, after review of the record, I conclude that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "zone of choice within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035, as the decision is supported by substantial evidence.

### III. REVIEW

The parties to this action may object to and seek review of this Report and Recommendation within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Frontier Ins. Co. v. Blaty*, 454 F.3d 590, 596 (6th Cir. 2006); *United States v. Sullivan,* 431 F.3d 976, 984 (6th Cir. 2005). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *McClanahan*, 474 F.3d at 837; *Frontier Ins. Co.,* 454 F.3d at 596-97. Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be concise, but commensurate in detail with the objections, and shall address specifically, and in the same order raised, each issue contained within the objections.

          s/ *Charles E Binder*
          CHARLES E. BINDER
Dated: May 1, 2008           United States Magistrate Judge

### CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date, electronically served on James Brunson, Mikel Lupisella, and the Commissioner of Social Security, and served on U.S. District Judge Cleland in the traditional manner.

Date: May 1, 2008     By    s/Patricia T. Morris
                                      Law Clerk to Magistrate Judge Binder